IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERFONE SYSTEMS, LLC (formerly known as LVL PATENT GROUP, LLC), | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) ) | C.A. No. 11-827 (SLR) |
| v. | ) ) | |
| CELLCO PARTNERSHIP; AT&T MOBILITY, LLC; SPRINT SPECTRUM L.P.; T-MOBILE USA, INC.; CRICKET COMMUNICATIONS, INC.; VIRGIN MOBILE USA, L.P.; UNITED STATES CELLULAR CORPORATION; METROPCS WIRELESS, INC.; TRACFONE WIRELESS, INC.; BOOST MOBILE, LLC; APPLE, INC.; RESEARCH IN MOTION  CORPORATION; NOKIA INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, INC.; MOTOROLA MOBILITY, INC.; HTC AMERICA, INC.; SHARP ELECTRONICS CORPORATION; PANTECH WIRELESS, INC.; LG ELECTRONICS MOBILECOMM U.S.A., INC.; HEWLETT-PACKARD COMPANY; SONY ERICSSON MOBILE COMMUNICATIONS (USA), INC.; CASIO AMERICA, INC.; FUTUREWEI TECHNOLOGIES, INC.; ZTE (USA) INC.; AND KYOCERA WIRELESS CORP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MOVING WIRELESS CARRIERS'
REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     ARGUMENT ............................................................................................... 2

        A.      The "Customer Suit Exception" Applies To This Case ........................................ 2

        B.      Resolution Of The Claims Against The Wireless Handset
                Manufacturers Carriers Is Likely To Resolve The "Major Issues"
                In The Claims Against The Wireless Carriers ........................................................ 4

        C.      All Four Factors To Be Considered In Determining Whether To
                Stay This Action As To The Wireless Carriers Militate In Favor Of
                Granting A Stay ................................................................................................... 8

        D.      A Stay Is Particularly Appropriate In View Of The Number Of
                Defendants ........................................................................................................... 9

III.    CONCLUSION ............................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
   No. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004)..........................................3, 8, 9

*Intellectual Ventures I LLC v. Altera Corp.*,
   C.A. No. 10-1065-LPS (D. Del. Jan. 23, 2012).........................................................................6

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed.Cir.1990) ...................................................................................2, 3, 7, 9

*Quanta Computer, Inc. v. LG Electronics., Inc.*,
   553 U.S. 617 (2008) ...................................................................................................................6

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009) .................................................................................................6

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
   766 F. Supp. 212 (D. Del. 1991)................................................................................................8

## I.      PRELIMINARY STATEMENT

Plaintiff chose to sue 140 defendants in nine separate cases on the same day to sidestep the new joinder rules set to take effect the next day.[1] As Judge Jordan concluded in a case in which the plaintiff had sued 'only' 35 defendants: "[F]rom the perspective of the host of defendants [that Plaintiff] has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. ***It is not a complication to be resisted***." *Honeywell Int'l Inc. v. Audiovox Comms. Corp.*, C.A. No. 04-1337-KAJ, 2005 WL 2465898, at *3 (D. Del. May 18, 2005) (granting a stay of the lawsuits against the non-manufacturers) (emphasis added).  The same reasoning applies with even greater force in this case where the Plaintiff has sued four times the number of defendants involved in that case (*see* Section II.D below).

Plaintiff's Answering Brief (D.I. 75) confirms that the litigation against the "Wireless Carriers" should be stayed until disposition of the actions against the "Wireless Handset Manufacturers."  Claims against the Wireless Carriers should be stayed because they are mere resellers of the ***only*** products specifically identified in the first amended complaint (*i.e.*, wireless handsets), and dealing with the upstream providers of those products (*i.e.*, the Wireless Handset Manufacturers) first is the fairest and most efficient way to proceed and would either resolve or at least vastly simplify the issues in this case (*see* Sections II.A and II.B below).  Moreover, a stay is clearly favored by each of the four factors to be considered when determining whether to grant a stay - it will not unduly prejudice or present a clear tactical disadvantage to the Plaintiff; it will simplify the issues and trial of the case; discovery has not begun; and no trial date has been set (*see* Section II.C below).

---

[1]      Plaintiff later chose to sue additional defendants, bringing this number to more than 150.

For the foregoing reasons, the claims against the Wireless Carriers should be stayed at this early stage to dispose of, or at least simplify, the case, and allow the action against the Wireless Handset Manufacturers to proceed.

## II.     ARGUMENT

### A.     The "Customer Suit Exception" Applies To This Case

Plaintiff's first argument is that the "customer suit exception" does not apply because the doctrine "is limited to circumstances where there are separate suits in different forums." (D.I. 75, Answering Brief, § IV.B. at pages 5-6).  However, plaintiff misconstrues the doctrine and fails to credit the strong public policy that underlies it.  Although the customer suit exception typically "arises when the first-filed case is an infringement action against a customer and the manufacturer subsequently files a declaratory judgment action against the patent holder in a different forum,"[2] that does not detract from the general principle that the litigation against the manufacturer of the allegedly infringing products should take precedence over suits against the customers of those products.  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.Cir.1990).

The "customer suit *exception*" is an exception to the first-filed rule because litigation against the manufacturer of the allegedly infringing products should take precedence over suits against the customers of those products.  It is this principle and strong public policy that justifies departing from the ordinary rule that the first-filed case takes precedence.  If this principle and public policy justify **both** departing from the well-settled first-filed rule **and** staying the litigation against the customers, the same principle and public policy certainly justify **staying** the case alone when the customers and manufacturers are sued in the same lawsuit.  Indeed, courts have

---

[2]     Defendants noted this in their opening brief.  *See* D.I. 100, Opening Brief, at page 10, n. 14 (*citing See Spread Spectrum Screening v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011)).

not hesitated to stay actions against customers in favor of actions against manufacturers when the actions against the customers and manufacturers are in the same forum (*e.g.*, Delaware),[3] regardless of which action was filed first.[4]

The principle and public policy underlying the customer suit exception thus applies to this case where the manufacturers of the accused handsets (the Wireless Handset Manufacturers) have been sued along with their customers (the Wireless Carriers) who **resell** those very same accused handsets. As in *Commissariat*, 2004 WL 1554382, in which manufacturers and customers were sued in the same action (see footnote 4), staying the action against the customers (the Wireless Carriers) is appropriate because "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at *3, quoting *Katz*, 909 F.2d at 1464.

---

[3]    Judge Jordan twice dealt with a similar situation, and twice stayed the claims against the non-manufacturer (customers), because "dealing with the manufacturers first is the fairest and most efficient way to proceed." *Honeywell*, 2005 WL 2465898, at *3-4 (further stating that proceeding against the manufacturers alone would "vastly simplify the issues" for trial); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 WL 1554382, at *3 (D. Del. May 13, 2004) ("[r]esolving [invalidity and non-infringement] issues prior to proceeding against the [customer defendants] would surely simplify [the] case").

[4]    A case in point is *Commissariat*, 2004 WL 1554382, in which the court consolidated all the actions against the manufacturers and stayed all litigation against the OEM/distributors and retailers ("customers"). That was done even though: (1) some manufacturers (*e.g.*, Samsung Electronics) and customers (*e.g.*, Dell) were sued in the same first-filed lawsuit (C.A. No. 03-484 filed 5/19/2003); and (2) other manufacturers were sued in lawsuits (*e.g.*, C.A. No. 03-1036 filed 11/13/2003 against Fujitsu) sandwiched in time between earlier lawsuits filed against customers (*e.g.*, C.A. No. 3-931 filed 10/6/2003 against Best Buy) and later lawsuits filed against customers (*e.g.*, C.A. No. 04-099 filed 2/13/2004 against Tatung). *Id.* at *1-3. The court reasoned that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at *3, quoting *Katz*, 909 F.2d at 1464.

**B.    Resolution Of The Claims Against The Wireless Handset Manufacturers Carriers Is Likely To Resolve The "Major Issues" In The Claims Against The Wireless Carriers**

Plaintiff's second argument is that the actions against the Wireless Carriers (customers) should not be stayed because the action against the Wireless Handset Manufacturers does not have the "potential to resolve the major issues" against the Wireless Carriers.   (D.I. 75, Answering Brief, § IV.B. at pages 6-7).   That argument does not stand up to scrutiny.   The suit against the Wireless Handset Manufacturers clearly has the potential to resolve all the major issues in the derivative actions against their customers (the Wireless Carriers) including claim construction, validity, and infringement.

As to the three patents asserted against both the Wireless Handset Manufacturers and the Wireless Carriers (the '382, '103, and '676 patents), the first amended complaint identifies one claim against both defendant groups and one additional claim against only the Wireless Carriers. However, in each instance the two claims are closely related, with the commonly asserted claim describing a device that Plaintiff alleges is infringed by the handsets supplied by the Wireless Handset Manufacturers, and the additional claim describing the same device in use.   *See* D.I. 75-1, '382 patent, claims 1 and 19; D.I. 75-2, '676 patent, claims 1 and 16; D.I. 75-3, '103 patent, claims 1 and 18.

For example, as to the '382 patent, claim 1 asserted against both defendant groups claims a "data transaction assembly server" that Plaintiff contends is the handset made by the Wireless Handset Manufacturers and ***resold*** by the Wireless Carriers.   Claim 19 asserted against the Wireless Carriers claims a "transaction entry device" that Plaintiff again contends is the handset made by the Wireless Handset Manufacturers and ***resold*** by the Wireless Carriers, but then adds

- 4 -

that the handset is used in a telephone network with a "transmission medium" and "server."[5] Plaintiff concedes as much, contending only that it asserts *additional* claim limitations against the Wireless Carriers (*see* D.I. 75 at 3 (noting that the allegations against the Wireless Carriers for the '382 patent include an allegation that they provide a system comprising a "transmission medium") and for the '676 and '103 patents include an allegation that they provide a system comprising a "database server")).

Thus, if a handset manufactured by the Wireless Handset Manufacturers does not infringe claim 1 asserted against both groups of defendants, that will necessarily resolve the infringement allegation as to claim 19 asserted against only the Wireless Carriers which admittedly only contains an additional claim limitation. That is a first major issue that has the potential to be resolved in the lawsuit against the Wireless Handset Manufacturers. Additionally, if claim 1 asserted against the handset is held invalid in view of the prior art, then the likelihood is extremely high that claim 19, which Plaintiff alleges covers the handset in a network, is invalid for the same reason. That is a second major issue that has the potential to be resolved in the lawsuit against the Wireless Handset Manufacturers. Still further, if the patent is held unenforceable due to inequitable conduct in a lawsuit against the Wireless Handset Manufacturers, that will render the patent unenforceable against the Wireless Carriers as well. That is a third major issue with the potential to be resolved in the lawsuit against the Wireless Handset Manufacturers. Finally, it goes without saying that most patent infringement cases are

---

[5]     This is also responsive to Plaintiff's other argument that the Wireless Carriers are not "mere resellers." (D.I. 75, Answering Brief, § IV.B. at page 6). The Wireless Carriers are indeed mere resellers of the accused handsets. In fact, in its Answering Brief in opposition to the Wireless Handset Manufacturers' motion to sever, Plaintiff states that "there *is* overlap in the accused products" between the Wireless Carriers and Wireless Handset Manufacturers. (D.I. 135, at page 8) (emphasis in original).

resolved by settlement prior to trial.[6]  If the Wireless Handset Manufacturers settle, then the lawsuit against the Wireless Carriers likely will be resolved as well because it is reasonable to expect that the Wireless Handset Manufacturers would only settle if their customers, with rights of indemnity, were not exposed to liability for reselling their handsets for use in a network. Indeed, even if the settlement agreement did not expressly extend to the Wireless Carriers, they likely would be immune from liability and suit under principles of patent exhaustion.[7]  That is a fourth major issue that has the potential to be resolved in the lawsuit against the Wireless Handset Manufacturers.

The same analysis applies with equal force to the other two patents asserted against both defendant groups.  Plaintiff contends that claim 18 of the '103 patent, asserted against both defendant groups, is infringed by the handsets made by the Wireless Handset Manufacturers and **resold** by the Wireless Carriers, while claim 1 asserted against the Wireless Carriers alone is infringed by the same handsets when used as intended in a telephone network with a "database

---

[6]    *See Intellectual Ventures I LLC v. Altera Corp.*, C.A. No. 10-1065-LPS, slip op. at 18 (D. Del. Jan. 23, 2012) ("It is overwhelmingly likely, however, that any federal civil litigation – including the instant case – will not actually go to trial. For instance, during the twelve-month period ending June 30, 2010 . . . only 1.1% of federal civil cases had a trial.  The same data show that among these federal civil cases, 2,766 were patent cases, and of these only 86 – or 3.1% - reached trial.")

[7]    "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."  *Quanta Computer, Inc. v. LG Electronics., Inc.*, 553 U.S. 617, 625 (2008).  In *Quanta Computer*, the Supreme Court ruled that a license to Intel to sell components of a patented system and method (*i.e.*, microprocessors and chip sets) exhausted the patent owner's rights in not only the components sold by Intel to the defendant, but also in the defendant's computers that combined those components "with non-Intel memory and buses in ways that practice the [plaintiff's] patents" (*id.*, at 624 because the components "substantially embodied" the patents.  *Id.*, at 621, 634035.  The same is of course true here where the handsets resold by the Wireless Carriers are accused of infringing certain  patent claims and are accused of infringing other patent claims when used in a network.  *See also TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009) (treating a covenant not to sue and a license the same under *Quanta* finding the "difference [in terminology] is only one of form, not substance--both are properly viewed as 'authorizations.'").

server."  Likewise, Plaintiff contends that claim 16 of the '676 patent, asserted against both defendant groups, is infringed by the handsets made by the Wireless Handset Manufacturers and **resold** by the Wireless Carriers, while claim 1 asserted against the Wireless Carriers alone is infringed by the same handsets when used as intended in a telephone network with a "database server."

Thus, as to the three patents asserted against both groups of defendants, it cannot seriously be disputed that the case against the Wireless Handset Manufacturers is likely to resolve all major issues in this case against the Wireless Carriers.  These three patents are also closely related to the fourth patent (the '060 patent) asserted solely against the Wireless Carriers,[8] and the products specifically alleged to infringe the '060 patent are the same handsets made by—and which will be part of the proceedings against—the Wireless Handset Manufacturers.  Consequently, resolution of the lawsuit as to the other three patents has the potential to also resolve all issues relating to the '060 patent.  Even if that were not true, however, the Federal Circuit has explained that "the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits."  *Spread Spectrum*, 657 F.3d at 1358; *see also Katz*, 909 F.2d at 1464.  That standard is met here, because even if the suit against the Wireless Handset Manufacturers did not resolve every issue, proceedings concerning the remaining claim limitations would be vastly simplified.

---

[8]    Defendants' Opening Brief (§ III.B. at pages 11-12) contains a detailed discussion of the commonality between the '060 patent and the other three patents.  For example, the patents all claim priority to the same application, have the same inventors, and share a common disclosure.  *See also* Plaintiff's Answering Brief in opposition to the Wireless Handset Manufacturers' motion to sever in which Plaintiff itself states "[b]ecause the patents are related, they are 'of the same technology.'" (D.I. 135, at page 5.)

C.    **All Four Factors To Be Considered In Determining Whether To Stay This Action As To The Wireless Carriers Militate In Favor Of Granting A Stay**

Each of the four factors considered by a court in determining whether to grant a stay militates in favor of granting a stay in this case.[9]

The first factor is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  In its Answering Brief, Plaintiff has not even attempted to show prejudice or a tactical disadvantage.  Thus, this factor favors granting a stay.[10]

The second factor is "whether a stay will simplify the issues and trial of the case."  This factor militates in favor of a stay because the major issues are likely to be resolved as discussed above.  As to this factor, Judge Jordan's opinion in *Commissariat*, 2004 WL 1554382 at *3, is directly on point as well.  In staying all litigation against the OEM/distributors and retailers in favor of the suit against manufacturers, Judge Jordan soundly rejected plaintiff's argument "that granting a stay would not simplify the issues pending against the retailers" for the following reasons.  *Id.*  "[I]t is common practice to stay all pending patent litigation except the first suit between the patent owner and a manufacturer or a higher level supplier."  *Id.*, quoting David F. Herr, *Annotated Manual for Complex Litigation*, § 33.63 (3d ed.2003).  "[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent

---

[9]    "When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Honeywell*, 2005 WL 2465898, at *2  (citing *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)); *Commissariat*, 2004 WL 1554382, at *1 (D. Del. May 13, 2004) (same).

[10]    *See Commissariat*, 2004 WL 1554382 at *2 (court stayed all litigation against OEM/distributors and retailers in favor of suit against manufacturers in part because "[the plaintiff] has not articulated, in its papers or at the hearing [record cite omitted] any real prejudice or tactical disadvantage that it would suffer if the proceedings against the OEM/distributors and retailers are stayed").

owner against customers of the manufacturer." *Id.*, quoting *Katz.*, 909 F.2d at 1464 "Because the manufacturers are intimately involved in the design, operation, and use of the accused [products], they are in the best position to contest the validity and infringement of [the plaintiff's] asserted patents" such that "[r]esolving these issues prior to proceeding against the OEM/distributors and retailers **would surely simplify this case**." *Id.* (emphasis added) "If, for example, [the plaintiff's] patents were found invalid or the manufacturers would [sic] found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties." *Id.* The same is equally true here.[11]

The third and fourth factors are "whether discovery is completed" and "whether a trial date has been set." These factors also favor the granting of a stay because this case is in its infancy, discovery has not yet begun, and no trial date has been set.[12]

In view of the foregoing, application of the four relevant factors favor the granting of a stay.

### D.    A Stay Is Particularly Appropriate In View Of The Number Of Defendants

Plaintiff chose to sue over 140 defendants in nine cases on September 15, 2011 to avoid the new joinder rules of the Leahy-Smith America Invents Act ("AIA") that took effect the next day, and in fact only a few hours after the complaints were filed. The complexity and logistical nightmare for the court in efficiently and effectively managing a case with so many defendants,

---

[11]    *See also Honeywell*, 2005 WL 2465898, at *4 (staying litigation against the non-manufacturer defendants customers pending the conclusion of litigation against the manufacturer defendants in part because "a stay … will vastly simplify the issues and trial of the case against the manufacturer defendants")

[12]    *See Honeywell*, 2005 WL 2465898 at *4 (staying litigation against the non-manufacturer defendants customers pending the conclusion of litigation against the manufacturer defendants in part because "it comes at time when discovery has not even begun and no trial date has been set").

and for the defendants in working to coordinate as much as possible all pretrial matters (*e.g.*, scheduling, protective orders, party and non-party written discovery and depositions, invalidity contentions, motion practice including briefing and hearings) in a case with so many defendants, is nothing short of breathtaking.[13]   It certainly makes the most sense to begin to simplify this massive undertaking by requiring Plaintiff to proceed first against the Wireless Handset Manufactures while staying the action as to their customers (the Wireless Carriers).   In that regard, the following statement from the court in *Honeywell*, 2005 WL 2465898, at *3, in which the plaintiff sued 'only' 35 defendants, applies four-fold in this case wherein Plaintiff CyberFone has sued over 140 (now over 150) defendants:

> [F]rom the perspective of the host of defendants [that Plaintiff] has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. It is not a complication to be resisted.

The claims against the Wireless Carriers should be stayed at this early stage to simplify the case, and allow the action against the Wireless Handset Manufacturers to proceed.

## III.   CONCLUSION

For the foregoing reasons, the Moving Wireless Carriers respectfully request that that the claims against the "Wireless Carriers" be stayed.

---

[13]   Indeed, Plaintiff continues to make this burden worse.   Not only did it add additional defendants throughout November and December (bringing the total to more than 150), but on January 30, 2012, it also filed thirteen additional cases asserting the '060 patent against parties who were already defendants in the 11-828 action.

SEITZ ROSS ARONSTAM & MORITZ LLP

*/s/ David E. Ross*

_____

Collins J. Seitz Jr. (#2237)
David E. Ross (#5228)
100 S. West Street, Suite 400
Wilmington DE 19801
(302) 576-1600
cseitz@seitzross.com
dross@seitzross.com
*Attorneys for Cellco Partnership*

OF COUNSEL:

Michael K. Kellogg
Wan J. Kim
Michael E. Joffre
Kiran S. Raj
KELLOGG, HUBER, HANSEN, TODD, EVANS &
FIGEL, P.L.L.C.
1615 M St., N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
psaindon@mnat.com
*Attorneys for Sprint Spectrum L.P. and
Boost Mobile, LLC*

RICHARDS, LAYTON & FINGER, P.A.

/s/ Steven J. Fineman
_____

Gregory P. Williams (#2168)
Steven J. Fineman (#4025)
Laura D. Hatcher (#5098)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
williams@rlf.com
fineman@rlf.com
hatcher@rlf.com
*Attorneys for Defendant U.S. Cellular
Corporation*

OF COUNSEL:

Richard J. O'Brien
Robert D. Leighton
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
psaindon@mnat.com

*Attorneys for T-Mobile USA, Inc.*

OF COUNSEL:

Mitchell G. Stockwell
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
(404) 815-6500

Amr Aly
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, NY 10019
(212) 775-8700

John C. Alemanni
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101
(336) 607-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
psaindon@mnat.com
*Attorneys for TracFone Wireless Inc. and Cricket Communications, Inc.*

OF COUNSEL:

Michael L. Brody
Jonathan E. Retsky
Thomas M. Williams
James Winn
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-3792

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

ASHBY & GEDDES

/s/ John G. Day
_____

John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com
*Attorneys for AT&T Mobility LLC*

OF COUNSEL:

Evan Finkel
Mark R. Kendrick
Michael Horikawa
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017
(213) 488-7100

William Atkins
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
psaindon@mnat.com
*Attorneys for MetroPCS*

OF COUNSEL:

Steven J. Pollinger
MCKOOL SMITH
300 W. 6th Street, Suite 1700
Austin, TX 78701
(512) 692-8700

Brett E. Cooper
MCKOOL SMITH
One Bryant Park, 47th Floor
New York, NY 10036
(212) 402-9400

February 6, 2012