**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CYBERFONE SYSTEMS, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>CELLCO PARTNERSHIP, ET AL.,<br><br>                    Defendants. | Civil Action No. 1:11-cv-827-SLR |
| CYBERFONE SYSTEMS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>CNN INTERACTIVE GROUP, INC., ET AL.,<br><br>                    Defendants. | Civil Action No. 1:11-cv-829-SLR |
| CYBERFONE SYSTEMS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., ET AL.,<br><br>                    Defendants. | Civil Action No. 1:11-cv-831-SLR |
| CYBERFONE SYSTEMS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS HOLDING COMPANY LLC,<br><br>                    Defendants. | Civil Action No. 1:12-cv-113-SLR |
| CYBERFONE SYSTEMS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>KNOLOGY INC.,<br><br>                    Defendants. | Civil Action No. 1:12-cv-116-SLR |

**PLAINTIFF CYBERFONE SYSTEMS, LLC'S ANSWERING BRIEF IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,019,060 UNDER 35 U.S.C. § 101**

Dated:  June 22, 2012

Of Counsel:

Marc A. Fenster
Bruce D. Kuyper
Eric J. Carsten
Fredricka Ung
Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
bkuyper@raklaw.com
ecarsten@raklaw.com
fung@raklaw.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

Attorneys for Plaintiff,
Cyberfone Systems, LLC

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.   Statement of Facts ........................................................................................................... 3

III.  Argument ......................................................................................................................... 5

     A.     Defendants Have The Burden Of Establishing Invalidity By Clear and Convincing Evidence ................................................................................................. 5

     B.     Invalidity Under 35 U.S.C. § 101 Should Be Determined Later .................................. 5

          1.     Invalidity Under 35 U.S.C. § 101 Should Be Determined After Claim Construction ..................................................................................................... 5

          2.     Invalidity Under 35 U.S.C. § 101 Should Be Determined Later In The Interest Of Judicial Economy ................................................................................................. 6

     C.     The '060 Patent Claims Patentable Subject Matter ..................................................... 9

          1.     The '060 Patent Passes the Machine-or-Transformation Test ............................. 10

          2.     The '060 Patent Does Not Claim Abstract Ideas .................................................. 14

          3.     '060 Patent Does Not Impermissibly Impede Commercial  Enterprise ................ 16

IV.  Conclusion ..................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Accenture Global Services GmbH v. Guidewire Software Inc.*,
  800 F. Supp. 2d 613 (D. Del. 2011) ............................................................................ 5

*Accenture Global Services GmbH v. Guidewire Software, Inc.*
  691 F. Supp. 2d 577 (D. Del. 2010) ............................................................................ 5

*Association for Molecular Pathology v. Myriad Genetics, Inc.*
  132 S. Ct. 1794 (Mar. 26, 2012) ................................................................................ 6

*Association for Molecular Pathology v. United States PTO*,
  653 F.3d 1329 (Fed. Cir. 2011)................................................................................... 6

*Bilski v. Kappos*
  130 S. Ct. 3218, 3225, (2010) ........................................................................... passim

*Collaborative Services v. Prometheus Labs*
  132 S. Ct. 1289 (2012) ............................................................................................... 8

*Cybersource Corp. v. Retail Decisions, Inc.*
  620 F. Supp. 2d 1068 (N.D. Cal. 2009) .................................................................... 15

*Cybersource Corp. v. Retail Decisions, Inc.*
  654 F.3d 1366 (Fed. Cir. 2011).................................................................................. 12

*Diamond v. Chakrabarty*
  447 U.S. 303, 308 (1980)......................................................................................... 8, 9

*Diamond v. Diehr*
  450 U.S. 175 (1981)............................................................................................... 7, 13

*Gottschalk v. Benson*
  409 U.S. 63 (1972)................................................................................................. 7, 10

*In re Bilski*
  545 F.3d 943 (Fed. Cir. 2008)..................................................................................... 5

*In re Comiskey*
  554 F.3d 967 (Fed. Cir. 2009)..................................................................................... 5

*Mayo Collaborative Services v. Prometheus Labs., Inc.*
  132 S. Ct. 1289 (2012) ................................................................................. 6, 7, 8, 15

*Microsoft Corp. v. i4i Ltd. P'ship*
   131 S. Ct. 2238 (2011) .................................................................................... 5, 10

*MySpace, Inc. v. GraphOn Corp.*
   672 F.3d 1250 (Fed. Cir. 2012) ........................................................................... 3, 6

*Parker v. Flook*
   437 U.S. 584 (1978) ................................................................................................ 7

*Prometheus Labs., Inc. v. Mayo Collaborative Serv.,*
   Case No. 04cv1200 JAH, 2008 U.S. Dist. LEXIS 25062 (S.D. Cal. March 28, 2008) ............. 8

*Prompt Med. Sys. v. Allscriptsmysis Healthcare Solutions, Inc.*
   Case No. 6:10-CV-71 U.S. Dist. LEXIS 30694, at *19 (E.D. Tex. Feb. 13, 2012) ................ 10

*Research Corp. Techs. v. Microsoft Corp.*
   627 F.3d 859 (Fed. Cir. 2010) ........................................................................ passim

*SiRF Tech., Inc. v. Int'l Trade Comm'n*
   601 F.3d 13193 (Fed. Cir. 2010) .......................................................................... 11

*Superspeed, L.L.C. v. Int'l Bus. Mach. Corp.,*
   Civil Action No. 2-07-CV-89, 2009 U.S. Dist. LEXIS 10124 (E.D. Tex. Feb. 11, 2009) ....... 16

*The Telephone Cases*
   126 U.S. 1, 531 (1888) ......................................................................................... 16

*Ultramercial, LLC v. Hulu, LLC*
   657 F.3d 1323 (Fed. Cir. 2011) .............................................................................. 6

*WildTangent, Inc. v. Ultramercial, LLC*
   2012 U.S. LEXIS 3890 (S. Ct. May 21, 2012) ......................................................... 6

## OTHER AUTHORITIES

35 U.S.C. § 101 ............................................................................................. passim

35 U.S.C. § 102 ............................................................................................ 2, 6, 8

35 U.S.C. § 103 ............................................................................................ 2, 6, 8

35 U.S.C. § 112 ............................................................................................ 2, 6, 8

35 U.S.C. § 282 ................................................................................................... 5

Fed. R. Civ. P. 56(c) ............................................................................................ 5

## I.    INTRODUCTION

The five Cyberfone patents asserted in litigation before this Court derive from inventions in the 1990s of Dr. Rocco Martino, an inventor who traces his work in the computer industry back to the very first digital computers (ENIAC) – enormous machines that filled whole rooms.[1] Forty years after his work with computers began, Dr. Martino created the inventions that led to the asserted patents.  His inventions, which the defendants either ignore or mischaracterize in their motion, were not abstractions.  As the file history of one asserted patent (incorporated by reference in the specification of the '060 patent) shows, Dr. Martino even brought a ***prototype*** of his ***machine*** to the PTO to demonstrate to the examiners his advancements in the merging of telephony, computers, and communications.[2]  The early prototypes of Dr. Martino's "Cyberfone" are still in his possession today, and he will testify about these prototypes at trial in these cases. His inventions, and the specific claims of the '060 patent, are not mere abstract ideas or mental processes that fall within a judicially-created exception to patent eligibility.  Rather, the claims of the '060 patent fall well within the broad categories of patent-eligible subject matter provided by Section 101 of the Patent Act.

Rather than address the actual claims of the '060 patent, Defendants spend the majority of their motion repeatedly describing, and then attacking, a patent that does not exist. Defendants invoke and then recite ***nineteen times*** the phrase "gathering, organizing, and forwarding information" (or slight variations), arguing that Cyberfone is attempting to preempt

---

[1] Dr. Martino has written several books about early developments in computing, and has been quoted publicly on the subject.  *See, e.g.*, ROCCO L. MARTINO, PEOPLE, MACHINES, AND POLITICS OF THE CYBER AGE CREATION (2011); "First electronic computer turns 50," available at http://www.cnn.com/TECH/9602/eniac/.

[2] *See, e.g.*, Ex. A (Excerpt of file history of '676) at CF000183 ("During the interview, Dr. Martino demonstrated a prototype of the invention to illustrate the menu and form driven operating system for a medical office application.  Dr. Martino also simulated communication with a remote phone mail system by connecting the prototype via a simulated phone connection to a laptop computer operating as a database.").

anyone from "gathering, organizing, and forwarding information." Defendants' description of the patent and its scope is false. If the asserted claim was "a method of gathering, organizing, and forwarding information," Cyberfone would not oppose Defendants' motion.[3] This, however, is not the language of the '060 patent. Properly construed, the '060 patent claims methods and systems that fall within the patent-eligible subject matter of Section 101.

This Court has recognized, based on Federal Circuit precedent, that claim construction is an important step in performing a Section 101 analysis. Defendants suggested that the expediency[4] of streamlining the litigations could trump this important step: there has been no identification of terms, exchange of constructions, briefing, or consideration of claim construction. Specific limitations from claim 1 of the '060 patent – "obtaining data transaction information entered on a telephone from a *single transmission* from [a] *telephone*," "forming a plurality of different exploded data transactions," and "sending [] different exploded data transactions *over a channel*," for example – are significant to the Section 101 analysis. Defendants do not explain the constructions these terms could have that would remove them from the scope of patent eligible subject matter under Section 101.

Defendants have invited the Court to ignore the claims of the '060 patent, and enter the "murky morass" of Section 101 analysis as a preliminary step, before addressing claim

---

[3] Presumably, the Defendants will admit that they gather, organize, and forward information. If the '060 patent did cover merely gathering, organizing, and forwarding information, Cyberfone would expect the Defendants to stipulate that they practice the patent.

[4] Defendants have oversold the effect that a summary judgment motion, well before claim construction or substantive discovery, will have on the pending litigations. Defendants in thirteen cases in which the '060 patent is the only asserted patent have reached settlement agreements with Cyberfone, and will soon be filing stipulated dismissals. Of the eight cases that will remain after those cases are dismissed, only *two* involve solely the '060 patent (11-829 and 11-831). A third case (11-827) includes the '060 patent as one of *five* asserted patents. Defendants claim, without explanation or support, that disposing of the '060 patent in that case, without the benefit of claim construction, will "greatly reduce the number of issues for the Court to resolve . . . ." (Defendants' Opening Brief ("Br.") at 1.)

2

construction or the requirements of the Patent Act under Sections 102, 103, and 112. *See MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250 (Fed. Cir. 2012). The Federal Circuit has specifically counseled against this approach, and an honest assessment of the landscape in Section 101 jurisprudence militates strongly against proceeding in this fashion. *See id.* The Federal Circuit has also emphasized the high bar that must be met to invalidate a patent as abstract idea under Section 101: "the disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that direct primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010). Regardless of when this Court addresses the Section 101 issue, however, the result is clear: Dr. Martino's inventions, and the claims of the '060 patent, fall within the broad categories of patent-eligible subject matter under the Patent Act. For all of these reasons, Defendants' motion should be denied.

## II.    STATEMENT OF FACTS

Moving Defendants ("Defendants") seek summary judgment of invalidity of Plaintiff Cyberfone Systems, LLC's U.S. Patent No. 8,019,060 (the "'060 patent"), entitled "Telephone/Transaction Entry Device and System for Entering Transaction Data into Databases." The '060 patent describes a "transaction entry device [that] is quite simple and inexpensive." ('060 patent, col. 2, lines 55-56.) "[T]he transaction entry device serves as an assembly point for specific transactions until they are ready for transmission to an external database server for processing and storage." (*Id.*, col. 3, lines 28-31.)

The application for the '060 patent was filed on September 4, 2007, and claims priority through continuations and continuations-in-part to an application filed on May 19, 1995. The

examiner at the PTO did not raise any concerns about Section 101 patent eligibility in the prosecution of the patent. Instead, he looked at other *issued* patents in the same field (which similarly did not trigger Section 101 concerns) and questioned how the claims of the '060 patent could overcome this prior art. For instance, the examiner cited U.S. Patent No. 5,220,501 to Lawlor, entitled "Method and System for Remote Delivery of Retail Banking Services." (*See* Ex. B (Excerpt of file history of '060) at CF0001857.) Unlike the invention of Dr. Martino's, however, the Lawlor system required *separate* transmissions from the remote terminals for each transaction, and also sent each transaction to a *single* destination. (*See id.* at CF001844.) Satisfied that the claims of the '060 patent were not anticipated or obvious, and otherwise met all conditions of patentability, the U.S. Patent and Trademark Office issued the '060 patent on September 13, 2011.

Claim 1 of the '060 reads as follows:[5]

> 1. A method, comprising:
> obtaining data transaction information entered on a telephone from a single transmission from said telephone;
> forming a plurality of different exploded data transactions for the single transmission, said plurality of different exploded data transaction indicative of a single data transaction, each of said exploded data transactions having different data that is intended for a different destination that is included as part of the exploded data transactions, and each of said exploded data transactions formed based on said data transaction information from said single transmission, so that different data from the single data transmission is separated and sent to different destinations; and
> sending said different exploded data transactions over a channel to said different destinations, all based on said data transaction information entered in said single transmission.

---

[5] Due to the extremely early stage of the litigations, Cyberfone will not even be serving its preliminary infringement contentions for well over a month. Cyberfone will therefore focus on Claim 1 – the exemplary claim in the complaints – in this brief. Claims 13 and 18 are the other independent claims. Various dependent claims also add limitations that are important to the section 101 analysis. For example, claim 23 requires system claim 18 to include a portable telephone as part of the first transaction tier.

## III.    ARGUMENT

### A.    Defendants Have The Burden Of Establishing Invalidity By Clear and Convincing Evidence.

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Section 282 of the Patent Act, "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. Whether a claim is invalid for failure to claim statutory subject matter is "a question of law that may be informed by subsidiary factual issues." *Accenture Global Services GmbH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577, 595 (D. Del. 2010) ("*Accenture I*") (citing *In re Comiskey*, 554 F.3d 967, 976 (Fed. Cir. 2009)). Section 282 requires an invalidity defense to be proved by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).

### B.    Invalidity Under 35 U.S.C. § 101 Should Be Determined Later.

#### 1.    Invalidity Under 35 U.S.C. § 101 Should Be Determined After Claim Construction.

As this Court has recognized, claim construction is an "important first step" in a Section 101 analysis. *Accenture I*, 691 F. Supp. 2d at 596 (quoting *In re Bilski*, 545 F.3d 943, 951) (Fed. Cir. 2008) ("*Bilski I*").[6] Here, there has been no claim construction or related briefing

---

[6] Section 101 decisions typically come after claim construction has been performed. *See, e.g.*, *Accenture I*, 691 F. Supp. 2d at 597 (citing prior claim construction of "claim folder"); *Accenture Global Services GmbH v. Guidewire Software*, Inc., 800 F. Supp. 2d 613, 621 (D. Del. 2011) ("*Accenture II*") (finding construed claims not limited to "specific devices or systems"); *Prometheus Labs., Inc. v. Mayo Collaborative Serv.*, Case No. 04cv1200 JAH, 2008 U.S. Dist. LEXIS 25062, at *5 n.1, *17 (S.D. Cal. March 28, 2008) (citing prior construction of the terms "greater than about 400" and "indicates a need"). Some courts, however, have resolved Section

whatsoever.  Defendants "specifically reserve the right to seek particular claim constructions in the future," but studiously avoid the issue of claim construction in their brief. The goal is obvious: to make this motion about something ***other than*** the actual asserted claims.  Indeed, it is not until page 19 of their brief that Defendants even mention some of the first limitations of claim 1: "obtaining data transaction information entered on a telephone ***from a single transmission from said telephone***."  The moving defendants have shown no reason to skip claim construction, and the Court should decline the invitation to do so.

> **2.      Invalidity Under 35 U.S.C. § 101 Should Be Determined Later In The Interest Of Judicial Economy.**

Furthermore, as observed recently by the Federal Circuit in *GraphOn*, Section 101 jurisprudence is a "murky morass," and district courts should "avoid the swamp of verbiage that is § 101 by exercising their inherent power to control the processes of litigation, and insist that litigants initially address patent invalidity issues in terms of the conditions of patentability defenses as the statute provides, specifically §§ 102, 103, and 112."  672 F.3d at 1260 (citation omitted).  The Federal Circuit concluded that "a case could be made for initially addressing the § 101 issue in the infringement context" when a "patent invokes the abstractness issue, such as a business method patent, ***if it is clear and convincing beyond peradventure***—that is, under virtually any meaning of "abstract"—that the claim is well over the line . . . ."  *Id.* at 1261.  This, however, would be a "rather unusual and infrequent circumstance."  *Id.*  Addressing Section 101 after Sections 102, 103, and 112 "would make patent litigation more efficient, conserve judicial resources, and bring a degree of certainty to the interests of both patentees and their competitors in the marketplace."  *Id.* at 1260.

---

101 disputes without formally construing the claim terms, but only where it is clear that claim construction will not inform the Section 101 analysis.

Compounding this morass that is Section 101 jurisprudence, the Federal Circuit will soon issue additional opinions in this area.[7] Furthermore, the lack of guidance in *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), on how courts should apply Section 101 and the seeming contradictions between *Mayo* and other Supreme Court precedents have generated widespread and significant criticism.[8]

As the Supreme Court has recognized, "All inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S. Ct. at 1293-94. Divining the point at which an application of an abstract idea becomes too abstract to qualify under Section 101 is a task riddled by subjectivity and philosophical niceties, and repeated discussions of *Parker v. Flook*, 437 U.S. 584 (1978), *Gottschalk v. Benson*, 409 U.S. 63 (1972), and *Diamond v. Diehr*, 450 U.S. 175 (1981) do nothing to change that reality.

---

[7] The Supreme Court has granted certiorari and vacated at least two recent Federal Circuit opinions concerning patentability under Section 101 for further consideration in light of *Mayo*. *See WildTangent, Inc. v. Ultramercial, LLC*, 2012 U.S. LEXIS 3890 (S. Ct. May 21, 2012) (granting certiorari and vacating *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323 (Fed. Cir. 2011)); *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 132 S. Ct. 1794 (Mar. 26, 2012) (granting certiorari and vacating *Association for Molecular Pathology v. United States Patent and Trademark Office*, 653 F.3d 1329 (Fed. Cir. 2011)).

[8] *See, e.g.*, Chao, Bernard H., *Moderating* Mayo (April 13, 2012), Northwestern University Law Review Colloquy, Forthcoming, U Denver Legal Studies Research Paper No. 12-12, available at http://ssrn.com/abstract=2039460, at 1, fns. 2,3 (noting that "critics have been quick to deride *Mayo*" and listing references). As Chao notes, one commentator has even stated that the decision "creates a framework for patent eligibility in which almost any method claim can be invalidated." Robert R. Sachs, *Punishing Prometheus*, Patently-O (March 26, 2012), http://www.patentlyo.com/patent/2012/03/punishing-prometheus-the-supreme-courts-blunders-in-mayo-v-prometheus.html (last visited on June 12, 2012). Indeed, a co-author of a paper on which the *Prometheus* court purportedly relied claims that, "Justice Breyer's approach [in *Prometheus*] broadly interpreted could be used to invalidate scores of patents—perhaps most of them." Sichelman, Ted M., *Funk Forward:* Funk Brothers Seed Co. v. Kalo*'s Pernicious Effects on Patentable Subject Matter in* Prometheus *and Otherwise* (April 5, 2012), Intellectual Property at the Edge: The Contested Contours of IP, Rochelle Dreyfuss, Jane Ginsburg & Carol Rose eds., 2012, forthcoming, available at http: http://ssrn.com/abstract=2035027, at 11-12. The same author criticizes the Court's opinion: "Although the Supreme Court in *Prometheus* relied upon our theory in part to justify its 'inventive concept' approach to patentable subject matter, I explain why our theory ultimately points in quite an opposite direction." *Id.* at 2.

Engaging in this endeavor, and inviting multiple levels of appeals over a judgment on abstraction, simply wastes judicial resources and creates uncertainty for private parties.

Contrary to Defendants' arguments, the Supreme Court has not held that Section 101 should be analyzed first, let alone prior to claim construction.  Although the Supreme Court in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ("*Bilski II*") stated that Section 101 is a "threshold test," the complete quotation makes clear that the Supreme Court was merely describing the nature of the test with respect to the other requirements of patentability:

> The § 101 patent-eligibility inquiry is ***only*** a threshold test.  Even if an invention qualifies as a process, machine, manufacture, or composition of matter, in order to receive the Patent Act's protection the claimed invention must also satisfy "the conditions and requirements of this title."  § 101.  Those requirements include that the invention be novel, see § 102, nonobvious, see § 103, and fully and particularly described, see § 112.

*Bilski II*, 130 S. Ct. at 3225 (emphasis added).

Defendants also argue that the Supreme Court's opinion in *Mayo* rejected a U.S. Government argument that "before considering whether a claim may be invalid under § 101, the claim should first be 'screened' (evaluated) under §§ 102, 103, and 112."  (Br. at 7.)  Again, this is an incorrect characterization.  The *Mayo* court rejected what it took as an invitation from the government to *replace* Section 101 analysis with a review under Sections 102, 103, and 112.  *See Mayo*, 132 S. Ct. at 1304 (characterizing government's position as a recommendation "to shift the patent eligibility inquiry ***entirely*** to these later sections") (emphasis added).  In short, *Mayo* and *Bilski II* say nothing about the timing of a Section 101 analysis.

In sum, proper claim construction should precede any Section 101 analysis.  Furthermore, this Court should heed the admonition of the Federal Circuit in *GraphOn*, and address issues of patentability under the well-established law of Sections 102, 103, and 112 before wading into the murky waters of Section 101.

**C.**   **The '060 Patent Claims Patentable Subject Matter.**

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent thereof, subject to the conditions and requirements [for patentability]."  35 U.S.C. § 101; *see also Bilski II*, 130 S. Ct. at 3225; *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980).  Section 101 is a "dynamic provision designed to encompass new and unforeseen inventions."  *J. E. M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 135 (2001). Three judicially-created exceptions to the broad categories of Section 101 have been recognized: laws of nature, natural phenomena, and abstract ideas.[9]

Here, Defendants argue that the '060 patent falls within the "abstract idea" exception to patentability."[10]  The problem is that courts have not defined what "abstract" means.  As one district court has noted,  "Controlling precedent offers scant guidance beyond the machine-or-transformation test on what defines the contours of an abstract idea for patent-eligibility inquiries."  *Prompt Med. Sys. v. Allscriptsmysis Healthcare Solutions, Inc.,* Case No. 6:10-CV-71, 2012 U.S. Dist. LEXIS 30694, at *19 (E.D. Tex. Feb. 13, 2012).  The Federal Circuit has acknowledged, "[t]he Supreme Court did not presume to provide a rigid formula or definition for abstractness."  *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010). Indeed, Justice Stevens noted in his concurrence in *Bilski II* that the Supreme Court has "never provide[d] a satisfying account of what constitutes an unpatentable abstract idea." *Bilski II*, 130 S. Ct. at 3236 (Stevens, J., concurring).

---

[9] Defendants claim that the "Supreme Court reiterated [in *Bilski II*] that its precedents carve out ***three broad categories***" of subject matter that are ineligible for patent protection under § 101: laws of nature, physical phenomena, and abstract ideas.  Br. at 8 (emphasis added).  The Defendants, however, have it backwards.  As *Bilski II* explained, "The Court's precedents provide three ***specific*** exceptions to § 101's ***broad patent-eligibility principles*** . . . ." 130 S. Ct. at 3225 (quoting *Diamond*, 447 U.S. at 309) (emphasis added).

[10] Defendants do not (and cannot) argue that the '060 patent covers either laws of nature or physical phenomena.

Against this backdrop, the Federal Circuit has held it would "not presume to define 'abstract' beyond the recognition that the disqualifying characteristic ***should exhibit itself so manifestly*** as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp.*, 627 F.3d at 868 (emphasis added). This is not the case with the invention here.

The '060 patent does not fall into the abstract idea exception to the broad statutory categories of patent eligible subject matter for two separate reasons, either of which is sufficient: (1) it passes the machine-or-transformation test; and (2) it is not an abstract idea, as it cannot be performed entirely in the human mind (or by a human with pen and paper).

### 1.    The '060 Patent Passes the Machine-or-Transformation Test.

Under the machine-or-transformation test, a claimed process is patent eligible if it (1) is tied to a particular machine or apparatus; or (2) transforms a particular article into a different state or thing. *Bilski I*, 545 F.3d at 954 (citing *Benson*, 409 U.S. at 70). Under the first prong (the machine prong), a machine "must play a significant part in permitting the claimed method to be performed."[11] *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). Here, the telephone is a specific machine that plays a significant part in permitting claim 1 of the '060 patent to be performed, and thus the claim meets the machine-or-transformation test.

It is axiomatic that to determine the patent eligibility of the claims of a patent, the claims themselves must be analyzed. Yet, instead of discussing the actual language of the patent,

---

[11] At one point, Defendants claim that "Cyberfone's '060 patent claims do ***not*** recite a specific new machine for performing a useful function." (Br. at 14 (emphasis in Brief).) This, however, is not the test. A new method using a machine known in the art also qualifies for patent protection. *See, e.g.*, *Diamond v. Diehr*, 450 U.S. 175, 182-83 (1981)) ("The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result.") (internal quotations omitted).

Defendants repeat the mantra of "gathering, organizing, and forwarding information" – a phrase that is absent from any claim of the '060 patent, yet appears throughout their brief approximately once per page.[12]   Only on page 19 do the Defendants mention, for the first time, that claim 1 of the actual asserted patent requires "obtaining data transaction information entered on a telephone *from a single transmission from said telephone.*"

Claim 1 of the '060 patent, tied to a transmission from a telephone, is similar to the claims held to be patent-eligible in *SiRF*.  The claims at issue in *SiRF* were directed to methods involving a "GPS receiver" or a "satellite signal receiver."  601 F.3d at 1331-32.  Finding that "[a] GPS receiver is a machine and is integral to each of the claims at issue," the Federal Circuit held the claims to be patent-eligible.  *Id.*  The Court further observed that "the presence of the GPS receiver in the claims places a meaningful limit on the scope of the claims."  *Id.*  The Court also noted that the claimed method could not be performed entirely in the human mind:

> We are not dealing with a situation in which there is a method that can be performed without a machine.  Contrary to appellants' contention, there is no evidence here that the calculations here can be performed entirely in the human mind.  Here, as described, the use of a GPS receiver is essential to the operation of the claimed methods.

*Id.* at 1333.

---

[12]The Defendants recite this mischaracterization of the claim nineteen times with slight variations: "abstract idea of gathering, organizing, and forwarding data" (Br. at 1); "concept of gathering, organizing, and forwarding data" (Br. at 2, 16, 17); "collecting, organizing, and forwarding data" (Br. at 3); "undeniably abstract concept of collecting, organizing and forwarding information" (Br. at 3); "abstract concept[s] of gathering, organizing, and forwarding [] information" (Br. at 5, 16, 17); "nothing more than abstract data handling principles (i.e., gathering, organizing, and forwarding information regarding some unspecified transaction)" (Br. at 5); "nothing more than the concept of gathering, organizing, and forwarding unspecified information (referred to as data)" (Br. at 4);"generic concept of gathering any transaction data, organizing it into subparts, and then forwarding the subparts to different destinations" (Br. at 6); "steps of gathering, organizing, and distributing information" (Br. at 11, 19); "gathering, organiz[ing,] and forwarding of data" (Br. at 12, 14); "concept of organizing and forwarding information" (Br. at 16); "abstract concept of gathering, organizing, and forwarding information" (Br. at 17); "abstract idea of gathering, organizing, and forwarding information" (Br. at 18).

Just as in *SiRF*, a machine is essential to the operation of the method of Claim 1 of the '060 patent.  Claim 1 requires obtaining data transaction information "**entered on a telephone from a single transmission from said telephone**."  The telephone is essential to the claim, and the method cannot be performed without a telephone.

Defendants' argument that the telephone is only the "source of information" and can therefore be ignored is unavailing.  Defendants make much of the Federal Circuit's rejection of claim 3 of the patent-at-issue in *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011), quoting the Court's claim that "The Internet is **merely described as the source of the data**."  (Br. at 13 (emphasis in Brief).)  Defendants, however, fail to quote the immediately preceding sentence of the *Cybersource* opinion: "Moreover, while claim 3 describes a method of analyzing data regarding Internet credit card transactions, **nothing in claim 3 requires an infringer to use the Internet to obtain that data** (as opposed to obtaining the data from a pre-compiled database)."  *Cybersource,* 654 F.3d at 1370; *see also id.* ("[T]he plain language of claim 3 does not require the method to be performed by a particular machine, or *even a machine at all*.") (emphasis added).  The actual claim 3 at issue in *Cybersource* reads:

> "A method for verifying the validity of a credit card transaction over the Internet comprising the steps of: a) **obtaining information about other transactions that have utilized an Internet address that is identified with the [] credit card transaction**; b) constructing a map of credit card numbers based upon the other transactions and; c) utilizing the map of credit card numbers to determine if the credit card transaction is valid."

654 F.3d at 1370 (emphasis added).  As the Court recognized, a human could obtain this information from any source and construct a map in his head.  *See id.* at 1373.

In contrast, the method of claim 1 of the '060 specifically requires obtaining data transaction information **from a single transmission from a telephone**.  In other words, a machine (a telephone capable of sending data transaction information) is a necessary part of the patented

method.  A machine capable of receiving that transmission is also required.  Similarly, claim 1 of the '060 patent specifically requires the sending of exploded data transactions ***over a channel***, which also requires a machine.  This is not mere data-gathering or the addition of "insignificant post-solution activity" as described in *Diehr*.  *See Diehr*, 450 U.S. at 191.  Obtaining data transaction information from a single transmission from a telephone is critical to the invention itself, as the file history and the discussion of the prior art make clear.  Defendants' repetition of the phrase "mere data-gathering" without addressing the actual language of the claim or the actual invention of Dr. Martino does not change this fact.

Not only does the '060 patent satisfy the machine prong of the machine-or-transformation test, but the claims satisfy the transformation prong as well.  Claim 1 requires "forming a plurality of different exploded data transactions" from the data transaction obtained from a "single transmission from [a] telephone."  In other words, the claim requires that a data transaction be transformed into multiple data transactions and sent over a channel to different destinations.  The sending of these exploded data transactions effects a transformation in the devices that receive them.  *See Cybersource*, 654 F.3d at 1376 (describing *Research Corp*) ("Because the method required the manipulation of computer data structures (*e.g.*, the pixels of a digital image and a two-dimensional array known as a mark) and the output of a ***modified computer data structure*** (a halftoned digital image), the method could not, as a practical matter, be performed entirely in a human's mind.") (emphasis added).[13]  For all of these reasons, the '060 patent passes the machine-or-transformation test.  As such, the '060 patent clearly falls

---

[13] *See also Superspeed, L.L.C. v. Int'l Bus. Mach. Corp.*, Civil Action No. 2-07-CV-89, 2009 U.S. Dist. LEXIS 10124, at *34 (E.D. Tex. Feb. 11, 2009) (finding that the " 'read data' and 'read cache hit' program flow, steps, and data structures" were the corresponding structure in a means-plus-function claim).

outside the judicially-created exception for "abstract ideas" and is patent-eligible under Section 101.

### 2.    The '060 Patent Does Not Claim Abstract Ideas.

Even if it did not pass the machine-or-transformation test, the invention of the '060 patent would still be patentable because it is not an abstract idea.  Defendants claim that "[t]he '060 patent's failure to satisfy the machine or transformation test, alone warrants summary judgment of invalidity."  (Br. at 15.)  This is simply a misstatement of the law.  In *Bilski II*, the Supreme Court made clear that the machine-or-transformation test is *not* the sole test for patentability, and that claims that do not meet the machine-or-transformation test may still fall within the broad categories of patent-eligibility under Section 101.  *Bilski II*, 130 S. Ct. at 3227; *see also Cybersource*, 654 F.3d at 1371 ("[A] patent claim's failure to satisfy the machine-or-transformation test is not dispositive of the § 101 inquiry").  Instead, the primary inquiry remains focused on whether the claimed invention falls within one of the three judicially-created exceptions.  *See Bilski II*, 130 S. Ct. at 3226.

If a method claim cannot be performed entirely in a human's mind, or by a human using a pen and pencil, the method is not an abstract idea.  *See Cybersource*, 654 F.3d at 1376 (describing *Research Corp*) ("Because the method required the manipulation of computer data structures (*e.g.*, the pixels of a digital image and a two-dimensional array known as a mark) and the output of a modified computer data structure (a halftoned digital image), the method could not, as a practical matter, be performed entirely in a human's mind."); *Research Corp.*, 627 F.3d at 868 (holding that the method was not an abstract idea and was eligible for patenting).  In *Research Corp.*, the court found that the modification of halftoned images could not be

14

performed in the mind, and therefore was not an abstract idea. *Id.* Because the method was not an abstract idea, the court held it patent eligible. *Id.*

The *Cybersource* court, cited by Defendants, applied the same test in assessing whether a method claim was an "abstract idea."  The district court had found that claim 3 of the patent-at-issue recited "an unpatentable mental process for collecting data and weighing values." *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009). Upon review, the Federal Circuit held that, "It is clear that unpatentable mental processes are the subject matter of claim 3.  All of claim 3's method steps can be performed in the human mind, or by a human using a pen and paper." *Cybersource*, 654 F.3d at 1372.  This finding compelled the court to find the method ineligible for a patent: "Thus, claim 3's steps can all be performed in the human mind.  Such a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *See id.* at 1373.

The '060 patent does not cover an abstract idea because, as in *Research Corp.*, its methods cannot be performed entirely in the mind.  Defendants do not attempt to argue that a human, even using a pen and paper, could "obtain data transaction information entered on a telephone *from a single transmission from that telephone*."  Humans cannot intercept and decode the transmissions of telephones as required by the '060 patent.  Nor can a human "form a plurality of different exploded data transactions" and send "exploded data transactions *over a channel*" to different destinations.  It is undisputed that the claimed method of the '060 patent cannot be performed entirely within the human mind, or by a human using a pen and paper.  This method therefore cannot be an "abstract idea" that would remove it from patent eligibility. *Research Corp.*, 627 F.3d at 868.

### 3.   '060 Patent Does Not Impermissibly Impede Commercial Enterprise

Finally, perhaps seizing on the vague recommendations in *Mayo* regarding the potential scope or effects of allowing a particular patent, Defendants claim that Cyberfone is attempting to shut down "gathering any transaction data" in "any field of commercial endeavor."  (Br. at 6.)  This claim is demonstrably false.  The '060 patent covers a telephone/transaction entry device, and claim 1 specifically covers a method of obtaining data transaction information *from a single transmission from a telephone*.  Defendants claim that Cyberfone asserts the patent against a "staggering array of products and services, including, inter alia, those by airlines, sports leagues, social media companies, home security companies, television studios, cable service providers, online retailers, and cellular telephone service providers – essentially any field of commercial endeavor."  (Br. at 6.)  Yet Defendants omit the actual products and services Cyberfone has accused.  Cyberfone has not asserted the '060 patent against the airline service provided by an airline, or against a sporting event provided by a sports league.  Cyberfone has accused applications ("apps") on mobile telephones – in this instance, "apps" that airlines and sports leagues have created whereby they obtain *data transaction information entered on a telephone from a single transmission of said telephone*.  The fact that mobile "apps" incorporating Dr. Martino's inventions are now commonplace is not an excuse to invalidate the '060 patent.[14]

## IV.   CONCLUSION

Dr. Martino's inventions, demonstrated with a prototype in front of PTO examiners, and the claims of the '060 patents are not abstract ideas or mental processes.  Even in the "murky

---

[14] Indeed, the Supreme Court's jurisprudence in this realm, specifically addressing the patent eligibility of broad method claims related to telephone technology, goes back well over a hundred years.  *See, e.g.*, *The Telephone Cases*, 126 U.S. 1, 531-35 (1888) (holding a claim for "The method of and apparatus for transmitting vocal or other sounds telegraphically, as herein described, by causing electrical undulations, similar in form to the vibrations of the air accompanying the said vocal or other sounds, substantially as set forth" permissible under the patent laws).

morass" of Section 101 jurisprudence, the Federal Circuit has made clear that the "disqualifying

characteristic should exhibit itself so manifestly as to override the broad statutory categories of

eligible subject matter and the statutory context that directs primary attention on the patentability

criteria of the rest of the Patent Act."  Defendants have not and cannot demonstrate that the '060

patent meets this burden.  Defendants' motion should be denied.


Dated:  June 22, 2012

Of Counsel:

Marc A. Fenster
Bruce D. Kuyper
Eric J. Carsten
Fredricka Ung
Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
bkuyper@raklaw.com
ecarsten@raklaw.com
fung@raklaw.com

BAYARD, P.A.

/s/ *Stephen B. Brauerman*
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

Attorneys for Plaintiff,
Cyberfone Systems, LLC