IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERFONE SYSTEMS, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 11-827 (SLR) |
| CELLCO PARTNERSHIP, et al., | ) ) ) | |
| Defendants. | ) ) | |
| CYBERFONE SYSTEMS, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 11-829 (SLR) |
| CNN INTERACTIVE GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| CYBERFONE SYSTEMS, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 11-831 (SLR) |
| AMAZON.COM, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| CYBERFONE SYSTEMS, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12-116 (SLR) |
| KNOLOGY INC., | ) ) ) | |
| Defendant. | ) ) | |

**REPLY BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY
OF U.S. PATENT NO. 8,019,060 UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................................... 1

II. THE '060 PATENT CLAIMS ARE INVALID UNDER SECTION 101 .......................... 1

    A. The claims are invalid under § 101 because they are drawn to the abstract concept of "a method of gathering, organizing, and forwarding information". ............................................................................. 1

    B. The cases on which Plaintiff relies do not support the validity of the claims of the '060 patent. ........................................................................... 2

    C. The '060 patent claims are invalid for the same reasons as the claims held invalid in *Cybersource* and *Dealertrack*. ............................................ 4

    D. The Federal Circuit's recent *CLS Bank* decision further supports holding the '060 patent claims invalid. .................................................... 5

    E. Plaintiff is incorrect as a matter of law when it argues that claims are valid under § 101 if they cannot be practiced "entirely in a human's mind" or "by a human using a pen and pencil". ........................................ 7

    F. Dr. Martino's alleged development of a prototype phone is irrelevant to the § 101 analysis for the '060 patent. ................................................. 8

III. RESOLUTION OF THE MOTION IS PROPER AT THIS STAGE OF THE CASE ................................................................................................................ 8

IV. CONCLUSION .......................................................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES**

*Accenture Global Services GmbH v. Guidewire Software, Inc.*,
   691 F. Supp. 2d 577 (D. Del. 2010) .................................................................................... 4

*Accenture Global Services GMBH v. Guidewire Software, Inc.*,
   800 F. Supp. 2d 613 (D. Del. 2011) ............................................................................ 3, 4, 8

*Bancorp Servs. v. Sun Life Assurance Co.*,
   771 F. Supp. 2d 1054 (E.D. Mo. 2011) ............................................................................ 3, 4

*Bilski v. Kappos*,
   561 U.S. ---, 130 S. Ct. 3218 (2010) ............................................................................ 5, 6, 7

*CLS Bank Intern. v. Alice Corp. Pty. Ltd.*,
   --- F.3d ---, 2012 WL 2708400 (Fed. Cir. Jul. 9, 2012) ............................................. *passim*

*Cybersource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................................. *passim*

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) .................................................................................. 4, 5, 6

*Fort Properties, Inc. v. American Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ............................................................................................ 6

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (*en banc*) ..................................................................... 5, 6, 7

*Mayo Collaborative Servs. v. Prometheus Labs. Inc.*,
   --- U.S. ---, 132 S. Ct. 1269 (2012) .......................................................................... 2, 3, 9, 10

*MySpace, Inc. v. GraphOn Corp.*,
   672 F.3d 1250 (Fed. Cir. 2012) .......................................................................................... 10

*Research Corp. Techs. v. Microsoft Corp.*,
   627 F.3d 859 (Fed. Cir. 2010) ...................................................................................... 3, 4, 7

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ......................................................................................... 2, 6

*The Telephone Cases*,
   126 U.S. 1 (1888) ................................................................................................................. 8

**RULES AND STATUTES**

35 U.S.C. § 101 ............................................................................................................. p*assim*

35 U.S.C. § 102 ............................................................................................................. 9, 10

35 U.S.C. § 103 ............................................................................................................. 9, 10

35 U.S.C. § 112 ............................................................................................................. 9, 10

## I. PRELIMINARY STATEMENT

In their opening brief, Defendants demonstrate that the '060 patent claims are drawn to an abstract concept of "gathering, organizing, and forwarding information" and, therefore, are invalid under 35 U.S.C. § 101. In its opposition, CyberFone Systems, LLC ("Plaintiff") presents no sound factual or legal basis for concluding otherwise. Defendants' motion should be granted.

## II. THE '060 PATENT CLAIMS ARE INVALID UNDER SECTION 101

### A. The claims are invalid under § 101 because they are drawn to the abstract concept of "a method of gathering, organizing, and forwarding information".

Plaintiff concedes that if the claims of the '060 patent are drawn to "a method of gathering, organizing, and forwarding information," then the claims are invalid under § 101. *See* Opp. at 2. ("If the asserted claim was 'a method of gathering, organizing, and forwarding information,' Cyberfone would not oppose Defendants' motion."). Yet, Plaintiff fails to identify a single claim limitation directed to anything ***other than*** "gathering, organizing, and forwarding information." Although Plaintiff refers to language in claim 1 regarding "obtaining data transaction information entered on a telephone from a single transmission from [a] telephone" (*i.e.*, gathering information), "forming a plurality of different exploded data transactions" (*i.e.,* organizing information), and "sending [] different exploded data transactions over a channel" (*i.e.*, forwarding information), *see, e.g.,* Opp. at 2 and 11, Plaintiff fails to explain how that language meaningfully limits the scope of the claim, or claims anything other than the abstract concept of gathering, organizing and forwarding information. Claim 1 is, therefore, invalid under § 101. Moreover, by addressing only claim 1, Plaintiff implicitly concedes that if claim 1 is invalid, the remaining claims should suffer the same fate. *See, e.g.,* Opp. at 4, n. 5.[1] Like

---

[1] Plaintiff briefly mentions claims 13, 18, and 23 in a footnote (Opp. at 4, n.5), but never again discusses these claims, their limitations, or why they would be patent eligible if claim 1 is not.

claim 1, the remaining claims do not include any limitations other than for gathering, organizing, and forwarding data and are, therefore, invalid as well.[2]

### B. The cases on which Plaintiff relies do not support the validity of the claims of the '060 patent.

Plaintiff's reliance on *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010), for the proposition that the claims of the '060 patent satisfy the machine-or-transformation test is misplaced. Opp. at 11-12. In *SiRF* the claims concerned a method for a GPS receiver to calculate its position. *Id.* at 1323. The claims recited numerous steps that "could not be performed without the use of a GPS receiver." *Id.* at 1331-32. For that reason, "the presence of the GPS receiver in the claims places a meaningful limit on the scope of the claims" and "the use of a GPS receiver is essential to the operation of the claimed methods." *Id.* at 1332-33. Hence, "the claims at issue are properly directed to patentable subject matter as they explicitly require the use of a particular machine (a GPS receiver) and could not be performed without the use of such a receiver." *Id.* at 1333.

The facts of *SiRF* contrast sharply with those here where the telephone is nothing more than the ***source*** of the information, as in claim 1's recitation of "obtaining data transaction information entered on a telephone from a single transmission from said telephone." ('060 patent, claim 1). The source of the data is irrelevant to the steps further recited in the body of the claim because the same steps could be performed regardless of the source of the data. As such, contrary to the position argued by Plaintiff (*see* Opp. at 10 and 11), the telephone ***does not*** "place

---

[2] In their opening brief, Defendants set out the actual claim language and then used the shorthand of "gathering, organizing, and forwarding information." *See* Opening Brief at 4-5, 18-19. That is the approach used by the Supreme Court in *Mayo Collaborative Servs. v. Prometheus Labs. Inc.*, __ U.S. __, 132 S. Ct. 1269, 1299 (2012) ("*Prometheus*") (using shorthand for three well-understood steps of claim). Plaintiff criticizes Defendants for their shorthand, yet refers to the same claim language corresponding to the shorthand, and fails to identify a single claim limitation directed to anything other than "gathering, organizing, and forwarding information."

a meaningful limit on the scope of the claims" and *is not* "essential to the operation of the claimed methods." Rather, the telephone, as the mere source of data, is part of an insignificant pre-solution activity (data gathering) that, as discussed in Defendants' opening brief, cannot make an abstract idea patentable subject matter.[3]

Plaintiff also incorrectly asserts that the claims satisfy the "transformation" prong of the machine-or-transformation test because data is divided into subparts per the claimed step of "forming a plurality of different exploded transactions," citing *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010). *Research Corp.* is inapposite. The patent at issue concerned a method for overcoming the problem that digital images cannot faithfully be reproduced on a computer display or printer. 627 F.3d at 862. The claims were for a particular method of transforming data representing an original digital image into data that simulates or approximates the original digital image when reproduced on a computer display or printer – a process known as digital halftoning in computer applications. *Id. at* 863, 865-66, 869.

Unlike *Research Corp.*, the '060 claims do not transform data in any way, but merely divide (explode) data into subparts, sending one part to one destination and another part to a another destination. Under the transformation prong, "a claimed process is patent-eligible pursuant to § 101 if … it transforms a particular article into a ***different state or thing***." *Accenture Global Services GMBH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 619-20 (D. Del. 2011) ("*Accenture II*") (emphasis added). In the claims of the '060 patent, the data received does not represent a particular article (*e.g.*, original digital image in *Research Corp.*), and the

---

[3] *See, e.g., Prometheus*, 132 S. Ct. at 1294 and 1299 (adding "insignificant postsolution activity" or "conventional or obvious pre-solution activity" insufficient to render claims patent-eligible); *Bancorp Servs. v. Sun Life Assurance Co.*, 771 F. Supp. 2d 1054, 1065 (E.D. Mo. 2011) ("[S]toring, retrieving, and providing data . . . are inconsequential data gathering and insignificant post solution activity.").

data received is not transformed "into a different state or thing" (*e.g.*, simulated or approximated digital image that can be rendered on a computer display or printer in *Research Corp.*).

*Bancorp*, 771 F. Supp. 2d 1054, in which the court granted summary judgment of invalidity under § 101, is instructive. As to the transformation prong the court concluded, "the claims here do not transform the raw data into anything other than more data and are not representations of any physically existing objects." *Id.* at 1066. "The concepts of fetching and processing data are not patentable processes but are attempts to patent a mathematical algorithm—converting a value in one format to a value in another format." *Id.* (citations and internal quotations omitted). The same is true here. The '060 claims do not transform the raw data (*i.e.*, the information received from the telephone) into anything (*i.e.*, the information is merely divided into subparts) and the data here are not representations of any physically existing objects. The concepts claimed in the '060 patent are obtaining and organizing data (*i.e.*, receiving information and dividing it into subparts to send to different destinations). Those concepts are not patentable processes, but are instead attempts to patent the abstract idea of gathering and subdividing information into subparts to send to different destinations.

In its opposition, Plaintiff made no attempt to distinguish the '060 claims from the claims involved in the district court decisions cited in Defendants' opening brief in which claims were found invalid under § 101 in very similar situations of data manipulation, including *Bancorp*, 771 F. Supp. 2d 1054; *Accenture Global Services GmbH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577 (D. Del. 2010) ("*Accenture I*"); and *Accenture II*, 800 F. Supp. 2d 613.

### C. The '060 patent claims are invalid for the same reasons as the claims held invalid in *Cybersource* and *Dealertrack*.

Plaintiff's effort to distinguish *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) is unavailing. In *Cybersource*, the Federal Circuit explained: "The

Internet is merely described as the source of the data. We have held that mere data-gathering steps cannot make an otherwise nonstatutory claim statutory." *Id.*, 654 F.3d at 1370 (citations, internal quotations, brackets omitted). The same analysis applies here. The telephone is at most the mere source of the data; it cannot and does not perform any steps recited in the body of the claim. Substituting a telephone for the Internet as the data source cannot save Plaintiff's claims.

The analysis applied by the Federal Circuit in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) is directly on point. In *Dealertrack*, the Federal Circuit determined that the claimed process "in its simplest form" included three steps: "receiving data from one source (step A), selectively forwarding the data (step B, performed according to step D) and forwarding reply data to the first source (step C)." Those claims were found invalid under § 101, despite the fact that they included such limitations as "receiving credit application data from at least one remote credit bureau terminal device" and "selectively forwarding the credit application data. . . to at least one remote funding source terminal device." Neither the use of a computer to perform the claimed steps nor the limitations specifying the data's source and destination rendered the claims in *Dealertrack* patentable because they did not "impose meaningful limits on the claim's scope." 674 F.3d at 1333, citing *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (*en banc*) ("*Bilski I*"), *aff'd*, *Bilski v. Kappos*, 561 U.S. __, 130 S. Ct. 3218 (2010) ("*Bilski II*"). The same is true of the '060 claims and summary judgment is, therefore, proper.

> **D.    The Federal Circuit's recent *CLS Bank* decision further supports holding the '060 patent claims invalid.**

In *CLS Bank Intern. v. Alice Corp. Pty. Ltd.*, – F.3d –, 2012 WL 2708400 (Fed. Cir. Jul. 9, 2012), a Federal Circuit panel split 2-to-1 in reversing a grant of summary judgment of invalidity under § 101. The majority nevertheless confirmed the guiding principles of the Supreme Court and Federal Circuit cases on which this motion is based, denominated "the *Bilski*

line of cases."[4] "The mere implementation on a computer of an otherwise ineligible abstract idea will not render the asserted 'invention' patent eligible." *Id.*, 2012 WL 2708400, at *9. Rather, any recited computer must impose "meaningful limits" on the scope of the claims and play a "significant part" in permitting the claimed method to be performed. *Id.* (quoting *SiRF*, 691 F.3d at 1333). Claims to a "disembodied concept without any limitation in the claims tying that idea to a ***specific application***" are not patentable. *Id.* at *10 (emphasis added).[5]

The majority found the claims patent-eligible because, "[u]nlike the *Bilski* line of cases, however, it is difficult to conclude that the computer limitations here do not play a ***significant part*** in the performance of the invention or that the claims are not limited to a ***very specific application*** of the concept of using an intermediary to help consummate exchanges between parties." *Id.* at *13 (emphasis added). "The limitations of the *claims as a whole*, not just the computer implementation standing alone, are what place meaningful boundaries on the meaning of the claims in this case." *Id.* (emphasis in original). Those limitations were directed to a "practical application of a business concept in a ***specific way***, which requires [a long list of] computer-implemented steps" and "requir[e] specific 'shadow' records [that] leave broad room for other methods" to achieve the same result "and, thus, do not appear to preempt much in the way of innovation." *Id.* at *13 (emphasis added) (listing more than a dozen required steps).

In sharp contrast to the patent at issue in *CLS Bank*, the claims here "as a whole" ***are*** directed to the disembodied concept of "obtaining data transaction information entered on a

---

[4] *CLS Bank*, 2012 WL 2708400, at *12, referring to *Bilski I,* 545 F.2d 943, *Bilski II,* 130 S.Ct. 3218, *Cybersource*, 654 F.3d 1366, *Dealertrack*, 674 F.3d 1315, and *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012).

[5] *See also CLS Bank*, 2012 WL 2708400, at *10 (claim invalid under § 101 if it is "manifestly evident that a claim is directed to a patent ineligible abstract idea"; claim invalid under § 101 if "single most reasonable understanding is that a claim is directed to nothing more than a fundamental truth or disembodied concept, with no limitations in the claim attaching that idea to a ***specific application***") (emphasis added).

telephone from a single transmission from [a] telephone" (*i.e.*, gathering information), "forming a plurality of different exploded data transactions" (*i.e.,* organizing information), and "sending [] different exploded data transactions over a channel" (*i.e.*, forwarding information). *See* '060 patent, claim 1; *see also* Opp. at 2, 11. They are not directed to any specific application of this concept, any specific way of achieving a result, or any specific machine-implemented intermediate steps. Instead, they are asserted against the broad idea of receiving non-descript information from a single transmission and sending subparts to different destinations, ***in any application***, in any industry or commercial endeavor, ***for any purpose***, without leaving room for other methods.[6] Moreover, as discussed in Defendants' opening brief (at 12-14) and herein, the law is well-settled (*see*, *e.g.*, *Bilski* line of cases) that reference in the claims to a "telephone" as the source of information, and to a "channel" over which sub-parts of the information are sent, are at most insignificant extra-solution activities that do not place any meaningful limit on the scope of the claims and are insufficient to transmute the claims into patent eligible subject matter. The claims are thus invalid under § 101.

### E.  Plaintiff is incorrect as a matter of law when it argues that claims are valid under § 101 if they cannot be practiced "entirely in a human's mind" or "by a human using a pen and pencil".

Plaintiff asserts that "[i]f a method claim cannot be performed entirely in a human's mind, or by a human using a pen and pencil, the method is not an abstract idea," citing *Cybersource*, 654 F.3d at 1376, and *Research Corp.*, 627 F.3d at 868. Opp. at 14. Plaintiff then argues that the claims are patent-eligible because they recite use of two non-human elements -

---

[6] The multitude of entities sued by Plaintiff demonstrates that the '060 claims, as asserted by Plaintiff, ***are not*** limited to any "specific applications." The claims have been asserted against a "staggering array of products and services" in "essentially any field of commercial endeavor." Opening Brief at 11. While Plaintiff objects to that characterization, it concedes that the claims are asserted against all such products and services offered through applications on mobile telephones – that is, where the source of the information is a telephone. Opp. at 16.

the "telephone" as the source of the information and the "channel" over which the subparts of the information are sent. Opp. at 15. Plaintiff is incorrect.[7]

While it is true that mental processes by themselves are not patent-eligible under § 101, the converse is not true: a method that involves more than a mental process alone is not ***necessarily*** patent eligible under § 101. If it were, there would be no need for the machine-or-transformation test or any other analysis. The Federal Circuit's *Cybersource* opinion addressed this very issue in ruling that a claim's requirement that the method be performed by a computer executing program instructions stored on a computer readable medium could ***not*** save the claims. *Id.*, 654 F.3d at 1376. The court in *CLS Bank* reiterated this conclusion. 2012 WL 2708400, at *9. The same is true here, as the reference in the '060 claims to a "telephone" as the source of data and to a "channel" over which data is later sent, cannot save the claims.

### F. Dr. Martino's alleged development of a prototype phone is irrelevant to the § 101 analysis for the '060 patent.

Plaintiff attempts to draw attention away from the language of the '060 claims to the work of Dr. Martino and a machine prototype brought to an Examiner interview ***regarding another patent***. Opp. at 1. Whether or not true, the prototype for a different invention than is claimed in the '060 patent as asserted by Plaintiff is wholly irrelevant to the Court's analysis.[8]

### III. RESOLUTION OF THE MOTION IS PROPER AT THIS STAGE OF THE CASE

Plaintiff argues that the Court should defer ruling on the motion to a later date, for a

---

[7] Indeed, if Plaintiff's "human only" test for abstractness were correct (which it is not), the holdings in many of the cases in which the claims were held invalid, including the *Accenture* cases, could not be supported.

[8] Nor can Plaintiff find support for the patentability of the '060 claims in the 1876 patent to Alexander Graham Bell for the telephone - a ***machine*** used to ***transform*** voice into electrical undulations to be transmitted over line wires to another location where it is converted back to voice - or in the Supreme Court's 1888 decision upholding its validity under the Patent Act of 1870. *See* Opp. at 16, n. 14 (citing *The Telephone Cases*, 126 U.S. 1, 531-35 (1888)).

variety of reasons. The Court should reject Plaintiff's arguments and grant summary judgment now, as is proper under the law.

First, Plaintiff urges the Court to defer ruling until after claim construction. *See, e.g.,* Opp. at § III.B. Plaintiff does not identify **any** claim term requiring construction before this motion is resolved, nor does it posit a construction of a claim term that would impact the § 101 analysis. If Plaintiff cannot identify a single construction of a claim term that would impact the analysis required to decide this motion, there is no reason to postpone resolution of this issue until after claim construction.[9] In the words of Plaintiff, the § 101 issue should be resolved "without formally construing the claim terms" because in this case "it is clear that claim construction will not inform the Section 101 analysis." *See* Opp. at 5-6, n. 6.

Second, Plaintiff asks the Court to defer ruling because "the Federal Circuit will soon issue additional opinions in this area." Opp. at 7. Plaintiff offers no basis to expect that further Federal Circuit decisions by panels bound by the *Bilski*-line of cases, will alter the proper analysis of the '060 claims or this motion. Indeed, the Federal Circuit, just days ago, reiterated the very legal principles that compel summary judgment here. *See CLS Bank,* 2012 WL 2708400. There is no reason to believe the Federal Circuit will reverse these now-reinforced principles.

Third, Plaintiff is incorrect when it argues that the Court should defer a ruling under § 101 until after the claims are evaluated for patentability under §§ 102, 103, and 112. *See, e.g.,* Opp. § III.B.2. As explained in Defendants' opening brief (at page 8 and n. 6), such an argument is directly contrary to the Supreme Court's decision in *Prometheus*. Plaintiff's argument that

---

[9] It is telling that Plaintiff did not raise this issue when the question of whether to allow the filing of Defendants' motion at this stage in the proceedings was before this Court at the May 15, 2012 conference. *See* Hrg. Tr. at 28-29.

*Prometheus* "say[s] nothing about the timing of a Section 101 analysis" is simply wrong. Opp. at 8. In *Prometheus*, the government argued, **as Plaintiff does here**, that before any analysis under § 101, claims should first be tested under §§ 102, 103, and 112 because those sections "can perform [a] screening function." *Id.* at 1303. The government argued that if the claims were first screened under these other sections of the patent statute, "these claims likely fail for lack of novelty under § 102," and there would be no need to evaluate the claims for patent-eligibility under § 101. *Id.* The Supreme Court rejected that argument, which would make the "exception[s] to § 101 patentability a dead letter," is "not consistent with prior law," and would create "greater legal uncertainty, while assuming that those sections can do work that they are not equipped to do." *Id.* at 1303-04. The Supreme Court concluded that "[t]hese considerations lead us to decline the Government's invitation to substitute §§ 102, 103, and 112 inquiries for the better established inquiry under § 101." *Id.* at 1304. Plaintiff makes precisely the same argument rejected in *Prometheus,* urging this Court to rely on §§ 102, 103, and 112 to perform a screening function and only consider § 101 later if the claims pass muster under those other statutory provisions. *See* Opp. at 8. The Supreme Court rejected that approach and Defendants respectfully ask this Court to do the same.[10]

### IV. CONCLUSION

For the reasons set out in their moving papers and above, Defendants respectfully request that the Court grant summary judgment that the '060 patent claims are invalid because they claim nothing but abstract concepts, which are not patentable subject matter under § 101.

---

[10] Plaintiff cites *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250 (Fed. Cir. 2012), a case decided before the Supreme Court's ruling in *Prometheus*, as support for its position. *See, e.g.,* Opp. § III.B.2. However, at most *MySpace* held that § 101 issues "need not *always* be addressed first." *See CLS Bank*, 2012 WL 2708400, at *6 (italics in original).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
psaindon@mnat.com

*With Authority of the Moving Defendants*

July 17, 2012

- 11 -